STATE OF CONNECTICUT *v.* FRANCISCO PENA
(6045)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 20—decision released October 4, 1988

*Jean Elmblad Blue,* special public defender, for the appellant (defendant).

*Steven M. Sellers,* assistant state's attorney, with whom, on the brief, was *Brian Cotter,* assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant appeals from a judgment of conviction of the crime of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a). The defendant claims that the trial court erred in accepting his *Alford* plea[1] and in

---

[1] A plea of guilty pursuant to *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), allows a defendant in a criminal case to consent to punishment as if he were guilty without the express acknowledgement of his guilt.

denying his subsequent motion to withdraw the plea. The defendant further alleges that the trial court erred in denying defense counsel's motion to withdraw his appearance and in refusing to appoint another special public defender to represent the defendant.

The following facts are pertinent to these issues. The defendant was arrested in Danbury on July 24, 1986, and charged with possession with intent to sell one ounce or more of cocaine, a violation of General Statutes § 21a-278 (a). The defendant was also charged with possession of a narcotic substance in violation of General Statutes § 21a-279 (a). The defendant initially entered a plea of not guilty to these charges. On November 12, 1986, however, when the case was ready for trial, the defendant withdrew his pleas of not guilty and on a substitute information entered a plea of guilty, pursuant to the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to the crime of possession of a narcotic substance with intent to sell in violation of General Statutes § 21-277 (a).

The state offered the following factual basis for the plea. During the month of June, 1986, the Danbury police received information that a man named "Juan" was selling large quantities of cocaine at the Super 8 Motel in that city. It was reported that Juan drove a white Dodge Omni bearing New York registration plates. Danbury police officers pursued the tip and observed the automobile at the motel as reported and further determined that the registration was in the name of one Virginia Rufino of New York City. On July 23, 1986, the police received a second tip that Juan's full name was Juan Rufino, described as a short Hispanic male with a dark beard, and that he would be taking a trip to New York City later that day to obtain more narcotics. Subsequently, the police observed Juan Rufino and a young woman, later iden-

tified as Elize Perez, enter a Datsun with Massachusetts registration plates. They also saw the defendant and a third man, Americo Ramirez, enter a white Dodge Omni. After making two local stops, the vehicles proceeded onto Interstate 684 heading toward New York City. The next day, at approximately 12:40 a.m., Danbury police officers observed the same two vehicles returning to Danbury on Interstate 684. The police stopped the cars and observed that the defendant was a passenger in the white Dodge Omni. The police also discovered in plain view a red duffle bag which contained more than seven ounces of cocaine having a purity of more than 75 percent. The defendant and the other occupants of the vehicles were arrested and charged with possession of one ounce or more of narcotics with intent to sell in violation of General Statutes § 21a-278 (a).

Perez gave a statement to the police which indicated that on the night in question she had accompanied Rufino, Ramirez and the defendant to the Bronx, New York, where they obtained the cocaine and then returned to Danbury. Perez's role was that of an interpreter in the event the vehicles were stopped by the police. She was to receive a quantity of heroin in return for her services. Perez later testified at a probable cause hearing that she had overheard a conversation between Rufino and the defendant describing the New York City trip as a "drug deal." Perez further gave the police information that she had also overheard Rufino "berate" the defendant for not collecting enough money for the cocaine that the defendant was selling for Rufino.

After hearing the factual basis supporting the defendant's plea and canvassing the plea in accordance with Practice Book §§ 711 through 713, the court accepted the defendant's *Alford* plea, and the case was continued for sentencing. At the sentencing hearing on Decem-

ber 15, 1986, the defendant made an oral motion to withdraw his guilty plea, alleging that he had been denied the effective assistance of counsel and that there was a lack of a factual basis for the plea pursuant to Practice Book § 721 (4) and (5), respectively.[2]

The defendant's counsel, acting as a special public defender, simultaneously moved the court to permit his withdrawal from the case, claiming that he was unable to be an effective advocate on the ineffective assistance of counsel claim, and moved for the appointment of another special public defender for the defendant. The court, *McDonald, J.,* denied the defense counsel's motion to withdraw from the case but, without ruling on the motion to withdraw the guilty plea, continued the case to allow the defendant to obtain new counsel and file "any motions" that they felt were necessary.

On February 17, 1987, after three continuances during which the indigent defendant was unable to obtain new counsel, the court, *Lavery, J.,* denied the defendant's renewed motion to withdraw his plea and the defense counsel's renewed motion to withdraw as special public defender and to appoint another special public defender in his place. The court then sentenced the defendant to an eleven year term of incarceration in accordance with the original plea agreement.

I

The defendant first claims that the trial court erred in accepting his *Alford* plea and in denying his motion to withdraw that plea at sentencing because there was an insufficient factual basis to support the plea. We disagree.

---

[2] "[Practice Book] Sec. 721.——GROUNDS

"The grounds for allowing the defendant to withdraw his plea of guilty after acceptance are as follows: . . .

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea . . . ."

We note at the outset that a trial court should not accept a plea of guilty until it has satisfied itself that a factual basis exists for that plea. Practice Book § 713.[3] A factual basis is required whether the plea of guilty is made pursuant to the doctrine of *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), or is accompanied by an admission of guilt. *Oppel* v. *Lopes,* 200 Conn. 553, 561, 512 A.2d 888 (1986); *State* v. *Deboben,* 187 Conn. 469, 475–76, 446 A.2d 828 (1982). In determining whether a factual basis exists, the court may consider the facts recited by the state's attorney as well as any other facts properly submitted to the court which support a conviction. *State* v. *Marra,* 174 Conn. 338, 346, 387 A.2d 550 (1978); *State* v. *Huey,* 1 Conn. App. 724, 731–32 n.5, 476 A.2d 613 (1984), aff'd, 199 Conn. 121, 505 A.2d 1242 (1986) ("trial court may consider transcripts, sworn statements, oral testimony, police reports, or other material to satisfy itself of the existence of factual basis"), citing *State* v. *Doherty,* 261 N.W.2d 677, 682 n.10 (S.D. 1978). A factual basis exists where the facts before the court are sufficient to establish each and every element of the crime charged. *State* v. *Eason,* 192 Conn. 37, 44, 470 A.2d 688 (1984); *State* v. *Battle,* 170 Conn. 469, 472, 365 A.2d 1100 (1976).

In this case, the defendant pleaded guilty to the crime of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a).[4] This statute provides criminal penalties for "[a]ny person who . . . possesses with the intent to sell or dispense . . . a narcotic substance . . . ." Accordingly, the state

[3] Practice Book § 713 provides: "The judicial authority shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the plea."

[4] The complete text of General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana,

had to produce sufficient facts to support a finding (1) that the defendant possessed a narcotic substance, and (2) that he intended to sell the substance.

The defendant first contends that there were insufficient facts before the court to support an inference that he possessed a narcotic substance. He contends that the facts before the court merely established him to be a passenger in a vehicle that contained narcotics and did not establish his possession of those narcotics. We disagree.

It is well established that "[i]n order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it." *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985). "The phrase 'to exercise dominion or control' as commonly used contemplates a continuing relationship between the controlling entity and the object being controlled. . . . The essence of exercising control is not the manifestation of an act of control but instead it is the act of being in a position of control coupled with the requisite mental intent." *State* v. *Hill,* 201 Conn. 505, 516, 523 A.2d 1252 (1986).

Our Supreme Court has held that evidence demonstrating that a person was an occupant in a car is not sufficient to establish that that person exercised dominion and control over an illegal object in that car. *State* v. *Watson,* 165 Conn. 577, 596, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). "It cannot be logically and reasonably

---

or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned."

presumed that an occupant of a motor vehicle knew of the presence of a [prohibited object] in a vehicle simply on the fact that he was an occupant. Presence alone, 'unilluminated by other facts' is insufficient proof of possession. *United States* v. *Romano,* [382 U.S. 136, 141–42, 86 S. Ct. 279, 15 L. Ed. 2d 210 (1965).]" *State* v. *Watson,* supra, 596. "Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' *Evans* v. *United States,* 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 901, 79 S. Ct. 221, 3 L. Ed. 2d 150 (1958); see generally annot., 56 A.L.R.3d 948 (1974)." *State* v. *Alfonso,* supra, 633.

In this case, there were other statements or facts before the court buttressing the inference that the defendant knew of the presence of the drugs in the car and exercised dominion and control over them. The court had the statement of Perez which indicated that on the night in question she had accompanied Rufino, Ramirez and the defendant to the Bronx where they had obtained cocaine and then returned to Danbury. Also before the court was the testimony elicited from Perez at a probable cause hearing in which she indicated that she had overheard a conversation between Rufino and the defendant describing the trip to the Bronx as a "drug deal." Finally, the court had the additional information provided by Perez that she had overheard Rufino berate the defendant for not collecting enough money for the drugs he was selling for Rufino. Given these additional statements, we find that the trial court had before it enough information to substantiate a claim that the defendant not only knew of the presence and character of the narcotic substance in the

car on the return trip from the Bronx but also exercised dominion and control over it. *State* v. *Vilalastra,* 9 Conn. App. 667, 673–74, 521 A.2d 170 (1987), rev'd on other grounds, 207 Conn. 35, 540 A.2d 42 (1988).

The defendant also contends that there were insufficient facts before the court to support an inference that he intended to sell the cocaine found in the car. We disagree.

The facts before the court indicated that the police found more than seven ounces of 75 percent pure cocaine in the car when the vehicle was stopped. As we noted in *State* v. *Parent,* 8 Conn. App. 469, 474, 513 A.2d 725 (1986), " '[p]ossession of large quantities of prohibited narcotics will support a conclusion that it was possessed for distribution or for sale.' [*State* v. *Avila,* 166 Conn. 569, 579, 353 A.2d 776 (1974)]." In this case, the inference that the drugs were possessed for the purpose of distribution or sale was supported by the statements of Perez. With regard to the defendant's first claim, therefore, we find no error.

## II

The defendant's second claim is that the trial court erred in denying defense counsel's motion to withdraw his appearance and in refusing to appoint another special public defender to represent the defendant on the limited issue of whether he should be permitted to withdraw his plea because of the ineffective assistance of counsel.

We begin our analysis of this claim by noting that a criminal defendant has a constitutional right to the effective assistance of counsel. *McMann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *State* v. *High,* 12 Conn. App. 685, 690, 533 A.2d 1217 (1987). This right is equally applicable whether defense counsel is court appointed or privately

retained. *Levine* v. *Manson,* 195 Conn. 636, 639, 490 A.2d 82 (1985). We note, however, that the right is not without limitation. "For example, the right to counsel does not include the ' "unbridled right to discharge counsel *on the eve of trial* . . . . " ' (Emphasis in original.) *State* v. *Drakeford,* [202 Conn. 75, 83, 519 A.2d 1194 (1987)], quoting *United States* v. *Grow,* 394 F.2d 182, 209 (4th Cir.), cert. denied, 393 U.S. 840, 89 S. Ct. 118, 21 L. Ed. 2d 111 (1968)." *State* v. *High,* supra, 690. "Furthermore, it is clear that the right to effective assistance of counsel does not include an 'unlimited opportunity to obtain alternate counsel.' *State* v. *Watson,* 198 Conn. 598, 610, 504 A.2d 497 (1986)." *State* v. *High,* supra.

In *State* v. *Watson,* supra, our Supreme Court considered a factual situation similar to the one presented by this case. The defendant in *Watson* had pleaded guilty and then attempted to withdraw his plea at sentencing on the ground that he had been denied the effective assistance of counsel. Defense counsel moved to withdraw, claiming that he could not effectively represent the defendant because of a conflict of interest. The trial court denied defense counsel's motion to withdraw and informed the defendant that he could proceed pro se or have defense counsel assert the basis of the defendant's claim of ineffective assistance of counsel. The defendant elected to proceed pro se and his motion was denied. Our Supreme Court held that the trial court was correct in denying defense counsel's motion to withdraw. The Supreme Court ruled that mere allegations of a conflict of interest do not merit the granting of such a motion.

The following additional facts are pertinent to our analysis of this claim. The defendant was represented by a special public defender during these proceedings. There was a probable cause hearing at which a lawyer from New York appeared and informed the court that

he had represented the defendant on other occasions in New York and had been retained by the defendant's family. He asked to be admitted pro hac vice. No written application was made by a member of the bar of this state as required by Practice Book § 24, and the request was denied without prejudice to the filing of another application to the trial judge should a trial occur at a later time. Nevertheless, the court permitted the New York attorney to sit at counsel table with the defendant and the special public defender to discuss strategy and propound any questions through the special public defender.

The New York attorney did not appear at any proceedings after probable cause had been found. When the case was first reached for sentencing, defense counsel informed the court that the defendant wanted to withdraw his plea. Counsel told the court that the defendant had informed him that he was not satisfied with counsel's performance. The matter was then referred to Judge McDonald, who had accepted the plea of guilty, and defense counsel requested permission to withdraw from the proceedings, stating that he believed that there was a conflict between himself and his client on the motion to withdraw the plea. The court was informed that the grounds for the motion to withdraw the plea were ineffective assistance of counsel and lack of a factual basis for the plea. After the court reporter read back the proceedings at the acceptance of the guilty plea, the court inquired about the basis for defense counsel's request for permission to withdraw from the case. Counsel informed the court that the defendant felt that he had not received effective assistance of counsel at the plea proceeding. The court again pressed for the basis for that claim, and counsel stated that he did not feel he was at liberty to discuss it further. In response to the court's expostulation that it could not rule on the motion unless it had some basis

for it, defense counsel stated that the court would have to act on the bare representation that the defendant felt he had not received effective assistance of counsel unless it wanted to hear testimony from the defendant and from counsel. The court determined that a factual basis for the plea had been stated[5] whereupon defense counsel noted his disagreement and stated that, "as to the other grounds," he did not feel that he could be an effective advocate. Counsel asked for the appointment of another attorney. The court asked the defendant to articulate why he thought defense counsel had not been effective, and counsel stated that the defendant should be advised by alternate counsel before answering. The court recessed so that defense counsel could discuss the defendant's response with him, remarking that simple dissatisfaction with defense counsel was not enough.

After the recess, the defendant told the court that he had been pressured by his lawyer to plead guilty, and that he could prove that the narcotics were not his.[6]

[5] "The Court: Well, I'd have to find there is no basis, that an adequate factual basis wasn't recited because he stated himself that he had no objection to a finding of an adequate factual basis, according to what's just been read; isn't that correct?"

[6] The colloquy proceeded as follows:

"Mr. Buzaid: Your Honor, I advised Mr. Pena not to address the court but he wishes to address the court.

"The Court: All right.

"Mr. Buzaid: Through the services of the court interpreter.

"The Court: All right, Mrs. DeJesus, thank you.

"The Defendant: With all due respect, I want to explain to you, Your Honor, that I pled guilty that day. Besides, it was not my decision but being pressured by my lawyer and the comments that I would be—that I would get life, forty years, I was scared and that's why I was hesitant. It was not my decision because I can prove that that was not mine.

"The Court: Because he can prove what?

"The Defendant: That that was not mine. Those charges, they're not my charges because I am—

"Mr. Buzaid: Your Honor, excuse me, I feel that the court has enough information in front of it to act on my motion to withdraw his plea at this time. The court really doesn't need to ascertain any more from Mr. Pena."

Defense counsel stated that he felt that the court had enough information upon which to act and did not need to ascertain anything more from the defendant. The court asked if counsel were instructing the defendant not to say anything more and gave them another opportunity to confer. After the conference, the defendant stated that he wanted another lawyer and a new trial. The court denied counsel's motion for permission to withdraw and continued the case for sentencing to allow the defendant to get another lawyer. After two additional continuances, counsel informed the court, *Lavery, J.,* that the defendant had been trying to retain other counsel and asked for another continuance. This request was denied. Counsel repeated his request for permission to withdraw as special public defender on the grounds that the defendant's plea was involuntary and that the defendant felt that counsel's assistance in explaining the plea and his advice in that respect were not effective. The court sought to determine the basis for the claim, but counsel stated that he could not put himself on the stand and that he could not adequately represent the defendant and produce evidence on any of the allegations regarding his effectiveness. When asked whether he wished to make a statement, the defendant stated that he had thought he would receive probation or a one year prison term, and that he was not guilty. The court found that there was no basis to support a change of plea.

The facts of this case clearly demonstrate that the court was never presented with a factual basis to support a claim of ineffective assistance of counsel. This claim is more properly addressed in habeas corpus proceedings in which evidence can be taken and facts found. See *State* v. *Gonzalez,* 205 Conn. 673, 684, 535 A.2d 345 (1987); *State* v. *Morico,* 14 Conn. App. 140, 145, 539 A.2d 1033 (1988). There is no authority for the proposition that unsupported allegations of ineffec-

tive assistance and conflict of interest, regardless of merit, require the court to furnish the defendant with an unlimited opportunity to obtain alternate counsel. *State* v. *Watson,* supra, 610. It is the province of the trial court to determine whether there is a factual basis for disqualification of counsel and, in the absence of a factual record showing an abuse of discretion, the trial court's failure to permit withdrawal of counsel is not reversible error. Id. The court did everything it could to attempt to determine whether there was a factual basis for the request and, from the record, it appears that counsel was unable to articulate any reason except that the defendant was dissatisfied. The defendant stated that he did not realize what the sentence would be and that he was not guilty. The first of these claims is refuted by the transcript of the proceedings at the time of the plea. As to the second claim, the defendant entered an *Alford* plea, which plea requires that he acknowledge that there was sufficient evidence to convict him despite his refusal to admit guilt. A request for substitution of counsel requires support by a substantial reason. *State* v. *Drakeford,* supra, 83; *State* v. *Morico,* supra, 144. We find, on the record before us, that the defendant has not established an abuse of discretion on the part of the trial court. There is no merit to this claim.

### III

The substitute information contained in the record includes notations that on November 12, 1986, there was a plea of guilty entered under the *Alford* doctrine, there was a finding of guilty by the court, and there was a finding that the defendant's plea was made knowingly, voluntarily, intelligently and with full understanding. On March 25, 1988, an assistant clerk of the Superior Court sent to the clerk of the Appellate Court a copy of the substitute information from which the letter "G," indicating a finding of guilty, had been erased.

In a letter attached to the information, the assistant clerk of the Superior Court stated that she had reviewed the transcripts and was unable to locate where the court had entered a finding of guilty. As a result, the clerk believed that she had entered the finding erroneously at the time of sentencing and removed it. The information had been signed by the judge at the time of disposition. The letter from the assistant clerk of the Superior Court and the altered substitute information were made available to this court and to counsel for oral argument.

On the basis of the revelation by the assistant clerk of the Superior Court, we permitted the defendant to raise a claim, which had neither been raised in his statement of issues nor briefed, that the trial court committed error in imposing sentence without first accepting the guilty plea. The defendant pressed the claim that pursuant to Practice Book § 720[7] the defendant should have been allowed to withdraw his plea as a matter of right because his guilty plea had not been accepted. He argues that this claim is reviewable without having been raised in the trial court under the exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We agree that the defendant's claim facially implicates a fundamental constitutional right. *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). Therefore, we will review the record to determine whether the claim is of constitutional proportions. Id.

It was not within the authority of the assistant clerk to alter the record by obliterating an entry on the sub-

---

[7] "[Practice Book] § 720.——WHEN ALLOWED. A defendant may withdraw his plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his plea upon proof of one of the grounds in Sec. 721. A defendant may not withdraw his plea after the conclusion of the proceeding at which the sentence was imposed."

stitute information which had been signed by the judge. The clerk is a recording officer, and if he or she has made a mistake the court may amend the record. *State* v. *Rowe,* 1 Conn. Cir. Ct. 427, 430, 186 A.2d 809, cert. denied, 150 Conn. 708, 204 A.2d 934 (1962); *Hillhouse* v. *Dunning,* 7 Conn. 139, 141 (1828). See General Statutes § 51-52 (general duties of clerks) and § 51-52a (powers of clerks and clerical assistants). These duties and powers do not include alteration of the records of the court.

The entry of a plea of guilty under the *Alford* doctrine is the functional equivalent of a plea of nolo contendere. *State* v. *Palmer,* 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985). A conviction occurs as a result of a plea of guilty. Id. By entering his plea, the defendant consented to punishment in the event that the court accepted the *Alford* plea as if he were guilty.

Until the question was raised by the court at the time of oral argument of this appeal, the defendant never claimed that a valid finding of guilty had not been made. The parties had always treated the case as if a finding that the plea was voluntary had been made and as if that plea had been accepted by the court. See *State* v. *Piskorski,* 177 Conn. 677, 748, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

Our review of the entire record leaves us with no doubt that a finding of guilty was manifest in the trial court's actions. Despite the absence of the specific words "I find the defendant guilty" in the transcripts, the trial court's unchallenged signature attesting to a finding of guilty is clear evidence of the court's conclusion as to the defendant's guilt. The court determined that the defendant had entered his plea "knowingly, intelligently and voluntarily with full understanding of the crime charged and the possible

consequences of the plea." Thereafter, the court continued the matter for preparation of a presentence investigation report. The court asked if there was anything more and remarked, "All right, thank you. So the trial would not be necessary in this matter; is that correct?" On the basis of these facts, we find that a finding of guilty was implicit in the trial court's actions and was properly recorded. There is no merit to the claim that a valid finding of guilty had not been made.

There is no error.

In this opinion, BIELUCH, J., concurred.

NORCOTT, J., dissenting. I disagree with the majority because I find that this case is factually distinct from *State* v. *Watson,* 198 Conn. 598, 504 A.2d 497 (1986). In *Watson,* our Supreme Court held that there was no error in denying defense counsel's motion to withdraw his appearance or in refusing to appoint new counsel to represent the defendant on his motion to withdraw his pleas when the defendant made only unsupported allegations of ineffective assistance of counsel and conflict of interest. In *Watson,* however, it was clear that the defendant was not completely denied the effective assistance of counsel when the trial court denied his motion for the appointment of new counsel. As the Supreme Court noted, after the defendant's request for new counsel had been denied, the trial court proceeded to hold a hearing on the defendant's motion to withdraw his pleas, permitting the defendant either to have his original counsel address the court or to present his argument pro se. The defendant elected to proceed pro se.

The factual scenario presented in this case is distinctly different. When the defendant's motion for withdrawal of his plea on the basis of ineffective assistance of counsel was first raised, counsel for the defendant

informed the court that he would be unable to represent the defendant on that matter because of what he perceived to be a conflict of interest.[1] Accordingly, he asked for permission to withdraw his appearance. The trial court denied his motion to withdraw and granted the defendant a continuance to find new counsel. Because of his indigency, however, the defendant was unable to obtain new counsel. When the matter came before the court a second time, defense counsel again refused to assert his client's claims of ineffective assistance of counsel. Accordingly, the defendant was forced to attempt to assert the basis of his claim of ineffective assistance of counsel himself. What resulted was a garbled statement which revealed nothing.

These facts indicate that, unlike the defendant in *Watson,* the defendant in this case was completely denied the effective assistance of counsel to which he was constitutionally entitled. *McMann* v. *Richardson,* 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *State* v. *High,* 12 Conn. App. 685, 690, 533 A.2d 1217 (1987). Because the trial court denied defense counsel's motion to withdraw his appearance and also denied the defendant's motion for the appointment of new counsel, the defendant was forced to rely on the counsel whose assistance he claimed was ineffective to assert his claim for withdrawal of his plea. This counsel, however, was unwilling to assert the defendant's claim of ineffective assistance of counsel. Accordingly, the defendant was required to act on his own behalf

---

[1] Defense counsel's claim of conflict of interest was a weighty one. "The conflict of interests inherent in a situation where an attorney must assert his own misconduct as a basis for relief to his client is plain. Once a client has accused his attorney of serious misconduct, such as that charged by the defendant in this case, continuance of the attorney-client relationship at the behest of the court is incompatible with the canons of professional ethics." *State* v. *Watson,* 198 Conn. 598, 615, 504 A.2d 497 (1986) *(Shea, J., dissenting).*

in this matter.[2] I consider this a violation of the defendant's constitutional right to the effective assistance of counsel.

I would also dissent because I do not feel that the defendant had an adequate opportunity to express the merits of his claim for withdrawal of his plea. When the court first asked the defendant to articulate the merits of his claim for withdrawal, the defendant gave a rather general response. The court asked the defendant a question on the matter, presumably to clarify the basis of the defendant's claim, but before the defendant could give a complete response, he was interrupted by defense counsel. Defense counsel informed the court that it needed to know nothing further to rule on the merits of the defendant's motion. The court proceeded onto other matters. Under these circumstances, I do not feel that the defendant was given an adequate opportunity to assert his claim of ineffective assistance of counsel. The defendant's response to the court's sole question at a subsequent hearing also did not constitute an adequate opportunity to assert the basis of the claim.

I would remand this case for a hearing on the defendant's motion to withdraw his plea. At that hearing, the defendant would be represented by new counsel.

---

[2] The defendant, then, was in a far worse situation than the defendant in *Watson*. Instead of being confronted with the choice of either representing himself or having the counsel he was claiming was ineffective assert the basis of his motion for withdrawal; *State* v. *Watson*, 198 Conn. 614, 504 A.2d 497 (1986) (*Shea, J.*, dissenting); this defendant had no choice; he was forced to represent himself.